ANDREW P. COLE v. A. M. YOUNG AND E. P. SHORT.

1. COURT OF EQUITY, *Power of, to Restrain Suits.* A court of equity may restrain a defendant who is within its jurisdiction and subject to its process, from prosecuting any action or proceeding either in the courts of this or of a foreign state.

2. RESTRAINING ORDER, *When Not Made — When Made.* But no such restraining order will be made simply because the litigation is in a foreign state, or to enforce a mere legal right, even though such right be granted by the statutes of this state, but only when there is a manifest equity which compels such restraining order.

3. PROSECUTION OF ACTION, *Not Restrained.* A. and B. were residents of Kansas. A. owed B. a just debt. He went into Missouri, taking certain personal property with him. This property was exempt by the laws of Kansas. B. commenced an action in Missouri by attachment before a justice of the peace, seizing this property. *Held,* That, upon

Cole v. Young.

the mere showing that the particular property seized was exempt, and without any showing as to A.'s liability to pay, or his possession of none save exempt property, or as to whether the debt was fraudulently contracted or not, or as to any fraudulent disposition of property since the contraction of the debt, a court of equity in Kansas will not restrain the prosecution of said action in Missouri.

### Error from Johnson District Court.

YOUNG & SHORT commenced an action against *Cole* before a justice of the peace in Cass county, Missouri, to recover upon an account for goods by them sold to the defendant. When this suit was begun, the parties thereto were heads of families, and resident in Johnson county, Kansas. June 30, 1879, *Cole* brought an action against *Young & Short* to perpetually restrain them from the further prosecution of their action against him, as aforesaid, in the state of Missouri. Trial by the court at the November Term, 1879, and the case taken under advisement until the next March Term, when the court dissolved the temporary injunction theretofore issued in the cause, and gave judgment against the plaintiff for costs. Other facts are stated in the opinion. *Cole* brings the case here.

*A. Smith Devenney*, for plaintiff in error.

*Burris & Little*, for defendants in error.

The opinion of the court was delivered by

BREWER, J: The defendants in error commenced a civil action in the state of Missouri against the plaintiff in error, to recover a sum of money due defendants in error for goods, wares and merchandise. At the time the suit was commenced both plaintiff and defendants were heads of families and resided in Johnson county, Kansas. When defendants in error commenced their suit in Missouri they attached one horse, which was released on bond, the case continued, and both plaintiff and defendants returned to Johnson county, Kansas. Plaintiff in error then commenced this action in the district court of Johnson county, Kansas, and obtained a temporary

injunction, restraining the defendants in error from prose-
cuting their said suit, pending in the state of Missouri. At
the November term this cause was tried by the court and
taken under advisement, and decided at the March term,
1880, the court dissolving the temporary injunction and ren-
dering judgment against plaintiff in error for costs. The only
testimony offered was that of the plaintiff, as follows:

" I am the plaintiff in this action, and live in Aubrey town-
ship, Johnson county, state of Kansas, near the line dividing
or separating Kansas and Missouri. I have a wife and two
children; they live on the farm with me. I have lived and
make my living on the farm. I own 120 acres of land. The
defendants, Young & Short, are merchants at Aubrey village,
in Johnson county, state of Kansas. I owe them a store bill
for goods which I bought of them in 1878 and 1879; it is
an open account; it is about $68.98. On the 17th day of
June, 1879, I went to mill at Belton, Cass county, Missouri,
and had a team of horses, a wagon and harness with me, and
while waiting for my grist at the mill a summons was served
on me from a justice's court of Cass county, Missouri, by a
constable, in a suit that day commenced against me by Young
& Short, in their firm-name, for the amount of my store bill
of $68.98, and at the same time they had the constable to
attach my mare. It was one of the span of horses I was
then working to my wagon. The constable attached the
mare in that suit, and I gave him a redelivery bond for the
mare and brought her home to Kansas with me. I did not
then, nor do I now, own any other work animal or team.
The animal I worked with the mare that was attached, be-
longed to my wife."

(*Cross-examination:*) "I have never paid the $68.98, nor
any part of it. It is an honest, just debt. When this suit
was commenced I owed Young & Short several hundred dol-
lars for goods. They held my notes for the amount. Since
the attachment suit in Missouri was commenced, Young &
Short have dissolved partnership, and I took up the notes
since the injunction issued in this case, by giving a valuable
or blooded horse for them. The horse belonged to my wife,
which she got from her brother when it was a colt. I took
up the notes by giving the horse for them, with my wife's
consent. I own nothing of the horse kind or team, except
the mare that was attached. The bill of $68.98 is for gro-

ceries for my family, which I bought of Young & Short in 1878 and 1879, at their store in Aubrey, Johnson county, Kansas. When the Missouri constable attached my mare, I did not state to him that I claimed it under the exemption laws of Kansas."

Upon these facts did the court err in refusing to continue the injunction? Of the power of the court to interfere and restrain the defendants from prosecuting their action in Missouri, there can be no question. A court of equity by injunction acts upon the person, and when it has the person of the defendant within its reach, it may forbid him from carrying on any prosecution proceedings anywhere. The authorities are full and clear upon this point.

The supreme court of Massachusetts, in the case of *Dehon v. Foster*, 4 Allen, 545, in a very learned and lucid opinion, considered the subject in all its bearings, and declared the doctrine to be clear and indisputable, that a court of chancery, upon a proper case being made, has authority to restrain persons within its jurisdiction from prosecuting suits, either in courts of its own state or of other states or foreign countries. This jurisdiction, it affirmed, is not founded upon any right to interfere with or control the proceedings of other tribunals in other states, but on the clear authority vested in courts of equity over persons within their jurisdiction, and amenable to process to restrain them from doing acts which will work wrong and injury to others, and are contrary to equity and good conscience. The attaching creditors in that case were held liable to be restrained by injunction. The exercise of this jurisdiction is sanctioned by English precedents. *Mackintosh v. Ogilvie*, 4 Term Rep. 193; 3 Swanst. 365. See also, *Snook v. Snetzer*, 25 Ohio St. 516; *Engel v. Scheuerman*, 40 Ga. 206; *Dehon v. Foster*, 4 Allen (Mass.) 545; *Vail v. Knapp*, 49 Barbour, 299; *Briggs v. French*, 1 Sumner, 504; *Massie v. Watts*, 6 Cranch, 148; *Keyser v. Rice*, 47 Md. 203; *Field v. Holbrook*, 3 Abb. Pr. (O. S.) 377; Rorer on Inter-State Law, p. 42v; 2 Story's Eq. Jur., §§ 899, 900; Hilliard on Inj., p. 234, *et seq.*

The question is, under what circumstances will a court of equity restrain a party from invoking the aid of the courts and processes of another state? It certainly will not do that, simply to compel him to carry on his litigation at home. It will not act upon the basis of any distrust of the courts of a sister state. Truth, as well as comity, compels us to recognize them as correctly expounding the laws of their states, and as enforcing rights according to those laws, purely and honestly. There is in this case no question but that the court in Missouri was acting conformably to the laws of that state, and that the proceedings before it were legal and regular. The parties plaintiff there, defendants here, were simply invoking the aid of that court to enforce a clear legal right. To compel a party to abandon that right necessitates the existence of an equity superior thereto. The only equity shown, or claimed, is, that the property sought to be subjected to the satisfaction of the debt could not, by the laws of this state, be so subjected. If suit had been commenced here, that property could not have been taken; commenced there, the laws of that state do not prevent its seizure. Yet this is a matter of assumption rather than of proof. There is no testimony as to the laws of Missouri, nothing to show that they limit exemptions to residents. But assuming that they are like ours, and that exemptions are limited to residents — is that of itself sufficient to compel the restraining of the action in Missouri? Notwithstanding the general language used in some of the opinions cited, *supra,* we are constrained to think that something more should appear. The debt, it is conceded, is a just one, and ought to be paid. It nowhere appears that plaintiff was unable to pay it, or even that he had not abundant property in this state, liable to seizure upon execution, to satisfy it. For aught that appears, while this particular property is exempt, he may have been the owner of goods, cattle or money, not exempt and subject to seizure under process from a justice's court, or of lands which might be taken under process from a court of record. It is not shown that he owns only property that is exempt. He may

have contracted this debt upon fraudulent representations as to the ownership of property in his possession, or being then the owner of abundant property, may since have fraudulently disposed of it. Suppose this action had been commenced in this state before a justice, and exempt property attached: would a court of equity have restrained the action on the ground of the exemption alone, or would it not rather have left the party to the assertion of his legal rights in a court of law? Is there any greater equity in plaintiff's claim because the proceeding was commenced before a justice in Missouri? If a party has simply sought the speediest and cheapest proceeding for the collection of a just debt, should he be restrained, and compelled to pursue his remedy at greater expense and in a court whose processes are slower and more tedious? If the action in Missouri had been a personal one, with personal service, and no property attached, no one would for a moment contend that the courts of this state ought to restrain the plaintiffs from putting that claim into judgment there; or, if defendant had property permanently situated there, that it might not properly be subjected to the payment of the judgment. There is, generally speaking, no inequity in subjecting a man's property to the payment of his debts; and while the law, for reasons of public policy, exempts certain property from seizure for debt, that exemption is simply a legal statutory right, and when a party appeals to a court of equity to enforce such exemption to avoid or delay the payment of a just debt, we think at the least it should be shown, not merely that the property is exempt, but also that the party has none other than exempt property. If there has been simply a mistake in the seizure of one piece of property rather than another, it seems to us that equity ought not to interfere unless the debt is first paid, but should leave the party to his legal remedies. We do not mean to say that equity would interfere at all where the only claim is that the property taken is exempt, providing the proceedings were all in this state. It may be that the party could only proceed in a court of law; but where the seizure is made in a foreign

state, the exemption cannot be enforced by suit at law, and a party may, therefore, have a right to proceed in equity. But then he should make it appear, not only that the seizure is illegal or against the laws of this state, but also that it is inequitable. In Hilliard on Injunctions, p. 238, § 34, it is said: "But it will not be the duty of the court to restrain foreign proceedings, if substantial justice is promoted by allowing them to take their course." And in 2 Story's Eq. Jur., § 899, the author says: "They [the courts] do not pretend to direct or control the foreign court, but, without regard to the situation of the subject-matter of the .dispute, they consider the equities between the parties, and decree *in personam* according to those equities, and enforce obedience to their decree by process *in personam*." In the case from 4 Allen, *supra*, the court uses this language: "If the case stated in the bill is such as to render it the duty of the court to restrain a party from instituting or carrying on proceedings in a court in this state, it is bound in like manner to enjoin him from prosecuting a suit in a foreign court. . . . All that is necessary to sustain the jurisdiction in such cases is, that the plaintiff should show a clear equity, and that the defendant should be subject to the authority and within the reach of the process of the court."

These authorities all agree that equity will not interfere to protect a mere legal right, but that it must also appear from the relations and circumstances of the parties that it would be inequitable to permit the continuance of the foreign action. We cannot think it so appears in this case, and therefore the judgment must be affirmed.

All the Justices concurring.