**KILPATRICK v. TEXAS & P. RY. CO.**

**PARKER v. SAME.**

Nos. 169 and 170, Dockets 20863, 20864.

Circuit Court of Appeals, Second Circuit.

March 4, 1948.

789

Arnold B. Elkind, and Gerald F. Finley, both of New York City, for appellants.

William H. Timbers and Davis Polk Wardwell Sunderland & Kiendl, all of New York City (Theodore Kiendl and Cleveland C. Cory, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

These are appeals in two actions at law under the Federal Employers' Liability Act.[1] As the complaints, motions and affidavits, and the court's action upon them were the same in both actions, it will be plainer to speak of them as though there had been only one. Each appeal is from two orders: One vacated a notice of dismissal served by the plaintiff before answer, and stayed the further prosecution of an action commenced later in the same court upon the same claim by the same plaintiff against the same defendant; the other denied the plaintiff's motion for leave to examine witnesses upon deposition, in order to ascertain whether the defendant was "doing business" in the Southern District of New York within the meaning of § 6 of the Act; and dismissed the action because from the defendant's affidavits it appeared that it was not doing so. The facts disclosed by the affidavits were as follows. The defendant operates a railroad in Texas, Arkansas and Louisiana, and the plaintiff was severely injured while in its employ in Texas. He sued in the Southern District of New York, and he alleges that the following local activities of the defendant are enough to subject it to jurisdiction in personam in that district. It maintains an office of eight employees who continuously solicit business in New York, both passenger and freight. The passenger business so secured is booked by the "Consolidated Ticket Office" in the City of New York, which issues tickets—including coupons for passage over the defendant's lines —collects the fares and accounts to the defendant. It does not appear in detail how the freight business is conducted, but we assume that agents of the initiating carriers issue joint way bills and bills of lading over routes which include the defendant's lines; and collect and account, as in the case of passenger traffic. The defendant has a financial agent in New York which transfers its shares, and pays the dividends and interest on its shares and bonds and equipment trust certificates. It sells no tickets here and carries on none of the other added activities which—coupled with the activities just described—caused

---

[1] §§ 51–60, Title 45 U.S.C.A.

us in Barnett v. Texas & Pacific Railway Company[2] to declare that it was "present" in New York in a case depending upon diverse citizenship.

The defendant moved to dismiss the complaint upon the grounds (1) that its local activities were not "doing business" within § 6; (2) that to force it to trial two thousand miles from the place of the injury was an undue burden on interstate commerce; and (3) that the plaintiff had not served the agent required by the statute. (The last objection was eventually withdrawn.) The plaintiff countered by a motion to examine all the employees of the defendant who were in New York, some of those of its fiscal agents, and some of those of the "Consolidated Ticket Office." Shortly thereafter he began a separate action by service upon another agent of the defendant (this to obviate the third objection), and the defendant rejoined with a motion to stay this second action until the judge should dispose of the motion to dismiss. The plaintiff thereupon served a notice of dismissal of the first action under the Rules,[3] which the defendant followed by moving to vacate the notice. Out of this thicket of procedure the judge emerged as follows. He refused to allow the plaintiff to examine witnesses by deposition; he vacated the notice of dismissal; and he dismissed the first action because he was satisfied from the defendant's affidavits— the plaintiff filed none—that it was not "doing business" within the meaning of § 6. Pending this decision he had stayed any proceedings in the second action. The result was to leave the plaintiff formally free to go on with the second action, but to make certain that it would be dismissed, if he attempted to do so. (The record does not show whether the second action is still outstanding.) At the outset we shall address ourselves to the chief controversy, which is whether the defendant is subject to suit in personam because of the local activities we have described.

In Baltimore & Ohio R. Co. v. Kepner[4] and Miles v. Illinois Central R. Co.[5] the Supreme Court held that, once a railroad "did business" in any jurisdiction, § 6 subjected it to personal service regardless of how much inconvenience or expense was involved in trying the action far away from the scene of the accident and the residence of all the defendant's witnesses. It followed that a plaintiff might, as here, select that jurisdiction which promised the richest harvest, and the railroad must meet him on his chosen ground. These decisions unconditionally eliminated from § 6 any considerations of "forum non conveniens," and so the Court explicitly recognized in Gulf Oil Corporation v. Gilbert,[6] in which it did allow that plea in abatement in a case depending upon diversity of citizenship. Nevertheless, there remained the question what constituted "doing business" under § 6, and, in particular, whether the same factors determined it as determined a corporation's "presence" in actions where no statute expressly prescribed the venue. So far as we have been able to find, the only courts which have passed upon that question, have assumed that the two phrases had the same meaning.[7] We cannot agree, for in 1945 the Supreme Court so restated the whole doctrine of corporate "presence" as to make it no longer possible to hold it identical with "doing business" under § 6.[8] The corporation there at bar maintained a local agency for the continuous solicitation of business, but it denied that it had gone any further, or at any rate that it had gone far enough to subject it to an action in personam under Green v. Chicago, Burlington & Quincy Railway Co.[9] The Court did not overrule that decision; but it did give a new explanation to corporate "presence," for it held that in order to determine that question the court must balance the conflict-

[2] 2 Cir., 145 F.2d 800.

[3] Rule 41(a) (1), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[4] 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222.

[5] 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, 146 A.L.R. 1104.

[6] 330 U.S. 501, 67 S.Ct. 839.

[7] Trizna v. New York, C. & St. L. R. R., D.C. S.D.N.Y., 57 F.Supp. 484; Pickthall v. Anaconda Copper Mining Co., D.C. S.D.N.Y., 73 F.Supp. 694.

[8] International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

[9] 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916.

ing interests involved: i. e., whether the gain to the plaintiff in retaining the action where it was, outweighed the burden imposed upon the defendant; or vice versa. That question is certainly indistinguishable from the issue of "forum non conveniens." Therefore, as we understand it, when a railroad is "doing business" continuously outside the state of its incorporation, § 6 makes irrelevant any question of "forum non conveniens"; but, when a railroad or any other corporation is doing business continuously outside the state of its incorporation, that "presence" which subjects it to personal service in actions for which no venue is specifically provided, depends upon the issue of "forum non conveniens."

■ The necessity that the corporation shall be "present" at all arises from the territorial limitations of the power of a state —legislative, executive or judicial—in dealing with the legal relations of a person not in allegiance. In the case of individuals it has of course been long recognized that the defendant must, ordinarily, be subject to a capias when the action is begun, if a judgment against him in personam is to be valid.[10] The same doctrine applies to corporations; but, since a corporation— whether it be regarded as a fabricated jural person, or an aggregate—is not identical with its members, spatial attributes can be ascribed to it only where its communal purposes are realized. It cannot be present in a place where none of its activities take place, and, literally at any rate, it is present wherever any of them do take place. It would therefore seem that, so far as it must be "present" in order to satisfy the territorial limitation upon the powers of a court when acting in personam, it should be enough constitutionally that it shall have extended its activities into the territory where that court's process runs. If that be true, the question whether it must stand trial in the particular forum which the plaintiff has chosen is, as we have said, identical with the plea of "forum non conveniens." Since the Supreme Court has held in the decisions we have just mentioned, that that plea is not permissible in

an action under the Federal Employers Liability Act, and the defendant was "present" in the only sense that a corporation can be present, the action well lay. Obviously, no question of any undue burden upon interstate commerce can arise as to an act of Congress.

We have assumed that it is a condition upon the validity of a judgment in personam that the local activities of the corporation have been "continuous," and have continued down to the time of the service of process; but it is not necessary so to decide in the case at bar, because the defendant's activities conform to that test. However, to avoid confusion, it may be proper to distinguish actions, like that at bar, which are brought upon liabilities that have arisen outside the state in which the court sits, from those brought upon liabilities that have arisen within it. It is settled that, given the proper procedural support for doing so, a state may give judgment in personam against a non-resident, who has only passed through its territory, if the judgment be upon a liability incurred while he was within its borders.[11] That, we conceive, rests upon another principle. The presence of the obligor within the state subjects him to its law while he is there, and allows it to impose upon him any obligation which its law entails upon his conduct. Had it been possible at the moment when the putative liability arose to set up a piepowder court pro hac vice, the state would have had power to adjudicate the liability then and there; and his departure should not deprive it of the jurisdiction in personam so acquired. On the other hand, in order to subject a non-resident who passes through a state to a judgment in personam for liabilities arising elsewhere, it would be necessary to say that the state had power so to subject him as a condition of allowing him to enter at all, and that for this reason his voluntary entry charged him generally with submission to the courts. As a matter of its own law of conflicts of law, no court of one country would tolerate such an attempt to extend the power of another; and, as between citizens of states of the United States, constitutional doubts would

---

[10] Pennoyer v. Neff, 95 U.S. 714, 24 L. Ed. 565.

[11] Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091.

arise which, to say the least, would be very grave, and which we need not consider.

■ It follows that the judge was wrong to dismiss the action, even upon the defendant's affidavits, for the continuous solicitation of business was itself "doing business" under § 6. Moreover, he was also wrong in vacating the plaintiff's notice of dismissal of the action. Butler v. Denton,[12] on which he relied, was altogether different: the United States had there intervened, and had filed a "plea of intervention," setting up affirmative matter which the court construed to be an answer because it introduced issues not raised by the plaintiff's amended petition. In the case at bar the defendant's motion not only did nothing of the kind, but being a challenge to "jurisdiction over the person," was a "defense" which under the rules[13] "may at the option of the pleader be made by motion." On what theory in the face of that provision it can be supposed that the "notice of dismissal" was not filed "before service of the answer"[14] we cannot comprehend. Thus the action was dismissed before the judge decided the defendant's motion to dismiss which was made earlier; and, if the order vacating the notice was a nullity, his later order of dismissal was also a nullity; and the appeals from both orders should be dismissed. On the other hand, if the order vacating the notice, though erroneous, was not a nullity, the appeal from the order of dismissal raises a justiciable appeal, unless the order vacating the notice is reversed before it is decided. Our jurisdiction over the appeal from the order of dismissal might in that event be thought to depend upon which appeal we decided first.

It does not appear to us necessary to pick a footing through such a morass. It is clear that the first action should be regarded as ended by the plaintiff's notice of dismissal, and it makes no difference whether that is when we reverse the order which vacated it, or when it was filed. All that can possibly be at stake is whether in reversing the order of dismissal, we shall be acting upon a matter that has become moot. That would be true had the plaintiff not brought the second action, which has all along remained procedurally untouched, except for the stay which is now at an end. If we should now refuse to decide the appeal from the order dismissing the action, precisely the same question would remain open as to the second action that the judge decided in the action at bar; and presumably, when the defendant moves to dismiss that action for lack of jurisdiction over the person, the judge who hears that motion will follow the first. On the ensuing appeal we should be in precisely the same position that we now are as to the order dismissing the first action; nothing would be gained, and considerable time and effort would be lost. We cannot believe that we are not free to cut our way out of such a tangle of verbiage, even though it may be literally true that the appeal from the order of dismissal becomes moot, as soon as the order of vacation is out of the way, either because we reverse it, or say that it is a nullity.

We decide the appeals as the record presents the facts. It was said at the bar that the plaintiffs had discontinued the second actions in reliance upon the defendant's assurance that it would not press the point that the summons had been served on the wrong officer. The effect of this, if true, and all questions which may be raised by facts not before us on this record, are to be understood to be open for decision in the district court. As the appeals stand in this court both orders in each of the actions will be reversed.

Orders reversed.

---

[12] 10 Cir.. 150 F.2d 687.
[13] Rule 12(b) (2).
[14] Rule 41(a) (1) (i).